FILED'11 MAR 31 12:05USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANDALL K. LUBIN,

        Plaintiff,                      CV-09-1043-AA

v.                                      OPINION AND ORDER

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.

AIKEN, Chief Judge:

## INTRODUCTION

      Plaintiff, Randall Lubin appeals the Commissioner's decision denying his application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is affirmed.

      Lubin alleged disability beginning on May 12, 2001. Admin. R. 48, 116. He satisfied the insured status requirements of the Social Security Act through December 31, 2006. *Id.* at 50, 121.

1 - OPINION AND ORDER

He must establish that he was disabled on or before that date to prevail on his claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). She found Lubin satisfied the severity requirement of step two because his ability to perform work activities is limited by chronic back pain persisting after a lumbar laminectomy, residual effects of a left ankle fracture in the remote past, mild to moderate degenerative arthritis in the right shoulder, and either major depression and/or a marijuana induced mood disorder. Admin. R. 50. At step three, the ALJ found Lubin's impairments did not satisfy the criteria for any of the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). Admin. R. 50-51.

The ALJ assessed Lubin with the residual functional capacity ("RFC") to perform work requiring light exertion if given the option to sit or stand at will, not required to do more than occasional overhead reaching, not exposed to hazards, limited to one to three step tasks, and not required to have contact with the public. *Id.* at 51. The vocational expert ("VE") testified that a person of Lubin's age, education, work experience, and RFC would be able to perform the activities required for light unskilled occupations such as hand stuffer, table worker, and small products assembler. *Id.* at 40-41, 56. The ALJ concluded that Lubin had failed to prove he was disabled before his insured status expired. *Id.* at 56.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The factual findings must be upheld if supported by inferences reasonably drawn from the record and if evidence exists to support more than one rational interpretation, the court must defer to the factual findings in the Commissioner's decision. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.   Claims of Error

Lubin contends the ALJ failed to assess his RFC accurately because she improperly rejected his allegations, the lay witness statements, the opinion of his primary care physician, and the opinion of an examining psychologist. Lubin claims the ALJ's RFC assessment is inconsistent with her findings at step three regarding his limitations in mental function. He contends the ALJ failed to develop the record adequately regarding his alleged cognitive disorder, diplopia, and difficulty reading. Lubin also challenges the hypothetical assumptions used by the ALJ to elicit testimony from the VE.

### II.   RFC Assessment

#### A.   Credibility Determination

Lubin alleged disability beginning in May 2001 due to limitations from chronic back pain, residual pain from a left ankle injury in the distant past, double vision since a childhood head injury, anxiety, and depression. Admin. R. 18, 48, 116, 131, 138. Lubin and his wife submitted written statements indicating these conditions caused him to be unable to walk more than a short distance, lift more than 5 pounds, or stay up for more than two hours at a time. They said he had limitations in memory and concentration, was often angry and frustrated, had poor vision, and had difficulty

3 - OPINION AND ORDER

reading. *Id.* at 155-59, 164-67. The ALJ accepted that Lubin suffered some degree of these limitations, but did not believe his symptoms were so intense and persistent that he could not work. *Id.* at 52, 54-55. In effect, the ALJ rejected Lubin's assertions of limitations exceeding the RFC assessment, such as the lifting limitation of five pounds, the inability to complete a work day if given the option to alternate sitting and standing, the inability to concentrate and remember well enough to perform work involving simple three-step tasks, and the inability interact with others well enough to perform work involving no contact with the public.

Where the claimant has produced objective medical evidence establishing that he suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that she did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ should consider objective medical evidence, the claimant's treatment history, daily activities, and work record, and the observations of treating sources and third parties with personal knowledge of the claimant's functional limitations. 20 C.F.R. § 404.1529(c); *Tommasetti*, 533 F.3d at 1039; *Smolen v. Chater*, 80 F.3d 1373,1284 (9th Cir. 1996); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186.

The ALJ's decision reflects that she considered the evidence relating to these factors. The ALJ noted that the objective medical evidence did not support the extreme level of impairment Lubin claimed. Admin. R. 52-53. In April 1998, Lubin had partial laminectomy procedures at L3-4 and L4-5. *Id.* at 330-37. In February 1999, an MRI study and other diagnostic imaging showed only mild

degenerative changes without evidence of nerve root compression; there was a suggestion of a recurrent disc protrusion, but the signal was relatively normal in appearance. *Id.* at 345-47. In MRI studies repeated in May 2000, "no definite disc protrusion is seen to suggest the presence of a recurrence." *Id.* at 341-43. Lubin recovered, returned to work, and reported that everything was going well. *Id.* at 319. He did not require medical care again until 2002, when he complained of shoulder pain. *Id.* at 359-64.

Notably, Lubin alleges he became disabled in May 2001, midway through this hiatus in his treatment history, with no contemporaneous treatment records or objective medical evidence of a change in his condition. *Id.* at 48, 116, 131. When a claimant does not seek treatment for months after the alleged onset of a disabling condition, the ALJ may draw an adverse inference as to the credibility. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001). Such an unexplained failure to seek treatment may cast doubt on the sincerity of a claimant's disability claim. *Flaten v. Sec'y of Health & Human Serv.,* 44 F.3d 1453, 1464 (9th Cir. 1995); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1993); *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991). Accordingly, an adverse inference as to the sincerity of Lubin's assertions of debilitating symptoms reasonably flows from his unexplained failure to seek treatment at the time those symptoms allegedly became disabling.

In May 2006, Derrick Sorweide, D.O., performed a physical examination to assess Lubin's claims of disabling pain in the lower back and left ankle. For objective findings, Dr. Sorweide obtained negative leg raise tests, full range of motion in all joints, normal deep tendon reflexes, full motor strength in the extremities, and a normal sensory examination. Lubin's left ankle was completely intact. *Id.* at 212.

During routine care beginning in 2005, Lubin's primary care physician, Katherine Mechling, M.D., did not record objective findings supportive of debilitating back or leg symptoms. *Id.* at 200-09. Dr. Mechling treated Lubin for a variety of routine ailments, including depressive symptoms, sore throat, acute otitis media, mole removal, hemorrhoids, prostatis, and flu symptoms. Evaluation and treatment of debilitating back and leg conditions were not prominent in this treatment history, however. Dr. Mechling's treatment of Lubin's back and leg conditions was apparently limited to medication management. In February 2007, Dr. Mechling completed a physical capacities worksheet, but the conclusions appear to be based on subjective information from Lubin instead of objective measurements from a physical capacities examination. *Id.* at 282-84, 299. Dr. Mechling continued to provide routine care during the proceedings in this case, but did not record objective findings regarding Lubin's back or left ankle. *Id.* at 288-98.

With respect to mental impairments, the ALJ noted that the record did not include findings by a treating psychologist or psychiatrist, because Lubin did not seek or require treatment from a mental health care specialist. *Id.* at 54. He received antidepressant medication from Dr. Mechling based on subjective symptoms of depression and anxiety. *Id.* at 19. He was advised by his physicians that marijuana definitely makes his anxiety worse. *Id.* at 20. Contrary to this medical advice, Lubin remains a heavy daily user of marijuana for pain relief and recreation. *Id.* at 19, 212, 217. When a claimant refuses to follow treatment recommendations that would ameliorate his allegedly disabling symptoms, the ALJ may draw an adverse inference as to the credibility of his allegations. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001).

In May 2006, Thomas Shields, Ph.D., conducted a psychodiagnostic evaluation. Lubin reported a history of struggling with alcohol and drug abuse, and admitted current daily use of

marijuana. He said he could not work because he did not like people and could not deal with people. He admitted, however, that his last job had ended when he was fired for smoking marijuana, not because of difficulty interacting with people. *Id.* at 215-17. When a claimant stops working for reasons unrelated to his alleged disability, the ALJ may draw an adverse inference as to the credibility of claims that he is unable to work. *Bruton,* 268 F.3d at 828.

Dr. Shields observed that Lubin appeared dysphoric, tearful, and agitated. Dr. Shields diagnosed a major depressive episode exacerbated by heavy marijuana abuse and could not rule out a substance induced mood disorder, cannabis dependence, methamphetamine dependence, or a personality disorder. *Id.* at 220. Dr. Shields said that Lubin appeared to have mild to moderate limitations in attention and concentration, intact immediate memory, somewhat limited recent memory, and low average intellect. *Id.* at 218. He gave no opinion regarding the functional impact of these limitations in vocational terms.

The relatively mild medical and psychological evidence suggested Lubin had some pain and mild to moderate mental limitations, but did not support the disabling symptoms he alleged. The absence of objective medical evidence cannot be the sole basis for discrediting subjective testimony, but is a proper factor in the credibility analysis. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007); *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005). The ALJ's conclusion that the objective evidence did not explain the debilitating symptoms Lubin alleged is supported by substantial evidence in the record. Accordingly, it was reasonable for he ALJ to draw an adverse inference as to the credibility of Lubin's assertions from the absence of objective medical evidence to support those assertions.

The ALJ also considered the observations of medical sources and third parties. Admin. R. 52-53. Dr. Sorweide observed inconsistencies in Lubin's presentation which led him to doubt the veracity of his subjective claims. For example, Dr. Sorweide observed that Lubin resisted certain range of motion testing but could perform the same motions without any sign of difficulty when not being tested. *Id.* Lubin had an irregular shuffling gait during testing, which resolved completely when he did not think he was being observed. Dr. Sorweide also noted that Lubin was fixated on his injuries from the past and described them in "exaggerated and grandiose terms." *Id.* at 212. He concluded that Lubin was "clearly faking several aspects of his exam" and appeared to be using narcotic pain medication and medical marijuana as much for recreation as for medicine.. *Id.* at 212-13. When a claimant fails to give full effort or attempts to impede accurate evaluation of limitations, the ALJ may draw an adverse inference as to the credibility of his claims. *Thomas*, 278 F.3d at 959.

In August 2006, investigators visited Lubin at his home and observed him ambulating without difficulty on uneven terrain. The ALJ found these observations contradicted Lubin's allegation that he had difficulty walking and were inconsistent with his presentation to Dr. Sorweide with an unsteady shuffling gait. Admin. R. 52-53. Lubin interacted normally with the officers, exhibiting no signs of anxiety, agitation, tearfulness, cognitive deficits, or memory loss. *Id.* at 227. These observations contradicted Lubin's testimony that he becomes overwhelmed by anxiety when meeting new people, being with people, or dealing with people. *Id.* 28-29, 52-53. The observations were inconsistent with Lubin's tearful, dysphoric presentation to Dr. Shields. *Id.* at 215-18. Lubin had recently obtained a motorcycle endorsement and described a level of activity inconsistent with his subjective allegations of debilitating symptoms. *Id.* at 226-28. A psychologist reviewed the

investigators' observations and concluded they supported a finding that Lubin's mental impairments were not severe. *Id.* at 230.

The ALJ also relied on inconsistencies in Lubin's own statements. *Id.* at 53. For example, although he and his wife said in their written submissions that he could not lift more than five pounds, Lubin testified that he was able to lift 45 pounds during the relevant period. *Id.* at 26-27. In June 2006, Lubin presented to Dr. Mechling with injuries suffered while loading a 75-pound pig into his truck. *Id.* at 10-11, 313. In written submissions, Lubin and his wife indicated he could not walk more than 75 yards before resting or sit for very long. *Id.* at 156-57, 164-65. In contrast, Lubin testified he could sit for 30 to 40 minutes before feeling back pain and could stand and walk for an hour before having to rest. *Id.* at 26-28. In the written submissions, Lubin and his wife described his daily activities as limited to watching television and alternating between sitting on the couch and lying down. *Id.* at 156, 164. Contrary to this, Lubin described activities to investigators including work on construction projects around his home and testified that his ability to ride motorcycles was curtailed by weather but not limited by pain or medication side effects. *Id.* at 17, 19, 226-28.

The ALJ's credibility determination is supported by inferences reasonably drawn from the record. Her decision provides an adequate basis for me to conclude that she did not discredit Lubin's subjective statements arbitrarily. Accordingly, the credibility determination is upheld. *Tommasetti*, 533 F.3d at 1039; *Batson*, 359 F.3d at 1193; *Thomas*, 278 F.3d at 958.

### B. Lay Witness Statements

Lubin contends the ALJ improperly rejected the written statements provided by his wife. An ALJ must consider lay witness statements concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay statements as to the claimant's symptoms

9 - OPINION AND ORDER

or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the statements of a lay witness, she must give reasons that are germane to the witness. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

The statements provided by Lubin's wife were identical in substance to the allegations Lubin made in his disability report and his own written submissions. The ALJ expressly considered these allegations together, "whether provided by Mr. Lubin, his wife, or his representative," and found them incongruent and lacking in credibility for the reasons described in the preceding section of this opinion. *Id.* at 52. Where an ALJ gives sufficient reasons for discounting the credibility of a claimant's subjective statements, those reasons are germane to a lay witness giving statements of the same or similar substance. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ's decision makes clear that she did not arbitrarily discount the lay statements of Lubin's wife without comment. The ALJ considered her statements and found them unreliable for germane reasons flowing logically from substantial evidence in the record as a whole. *Lewis*, 236 F.3d at 511; *Nguyen*, 100 F.3d at 1467. The ALJ's evaluation of the lay witness statements, therefore, is upheld.

### C. Medical Source Statements

Lubin contends the ALJ improperly discounted the medical source statements of Drs. Mechling and Shields.

Dr. Mechling provided Lubin with routine primary care from January 2005 until after his insured status expired. In February 2007, Dr. Mechling completed a physical capacities worksheet

on which she indicated Lubin had physical impairments limiting him to less than a sedentary level of exertion. She said Lubin could sit for a total of three hours and stand or walk for a total of three hours in an 8-hour workday. She indicated he could not perform fine manipulation or repetitive motion tasks with his hands or feet. She indicated he could lift no more than five pounds frequently or ten pounds occasionally. He could not engage in such postural activities as climbing, stooping, kneeling, crouching or reaching above shoulder level. Dr. Mechling stated that the medical basis of Lubin's disabling symptoms was "failed back surgery." Admin. R. 282-83.

The ALJ gave reduced weight to Dr. Mechling's opinion. *Id.* at 54. An ALJ can properly discount a physician's opinion that is inconsistent with the opinion of another physician by providing specific and legitimate reasons that are supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Mechling's disability opinion is contradicted by the report of Dr. Sorweide. Admin. R. 213. Accordingly, the ALJ was required to explain why she discounted Dr. Mechling's opinion with specific, legitimate reasons.

The ALJ found the physical limitations in Dr. Mechling's worksheet contrary to the functional capacities Lubin admitted in his testimony. Admin. R. 54. For example, Lubin testified that during the relevant time, he could lift 45 pounds frequently. *Id.* at 26-27. He could sit without discomfort for 30 to 45 minutes at a time before he needed to stand up. *Id.* at 27. He could stand for an hour at a time before he had to sit down. *Id.* He had no limitation using his fingers to do things. *Id.* at 28.

The ALJ found the physical limitations in Dr. Mechling's worksheet contrary to Lubin's reported daily activities. *Id.* at 54. For example, Lubin is a motorcycle enthusiast whose riding activities are limited by weather, but not by his physical capacities. *Id.* at 17. He admitted wrestling

11 - OPINION AND ORDER

a 75 pound pig into his truck. *Id.* at 10-11, 310. Lubin admitted participating in construction activities improving his home, although he later disputed the extent of his participation. *Id.* at 14-15, 227-28.

The ALJ found the physical limitations in Dr. Mechling's worksheet unsupported by objective findings in her progress notes. *Id* at 54. Dr. Mechling recorded minimal objective findings to support the physical limitations indicated on her worksheet. In March 2006, Dr. Mechling noted tenderness in the left ankle at the base of the Achilles tendon. *Id.* at 200. In June 2006, she noted that Lubin had sustained an acute injury to the right patella while loading a pig into his truck. *Id.* at 310. In September 2006, Dr. Mechling observed that Lubin presented with a limp and slowed gait due to past trauma. *Id.* at 306. In December 2006, Lubin suffered a finger laceration while operating a pressure washer. *Id.* at 302. Dr. Mechling did not record any other examination findings relating to Lubin's physical limitations, much less perform functional capacities testing that would support her physical capacities worksheet.

Without objective findings of her own, Dr. Mechling attributed the limitations indicated on her disability worksheet to "failed back surgery." *Id.* at 282-83. The ALJ found no documentation in the record to support Dr. Mechling's belief that Lubin's back surgery had failed. *Id.* at 54. Lubin argues that a February 1999 MRI report supports Dr. Mechling's assertion of failed back surgery because it suggested a recurrent focal right sided disc protrusion at L4-5. *Id.* at 346. A follow-up MRI in May 2000, however, indicated no suggestion of a recurrence. *Id.* at 342. Thereafter, Lubin returned to work until his disability allegedly began in May 2001.

In addition, Dr. Sorweide performed a physical examination focused directly on Lubin's allegedly disabling back and ankle limitations and found no objective basis for his symptoms. *Id.*

12 - OPINION AND ORDER

at 212-13. Under these circumstances, the ALJ reasonably concluded Dr. Mechling's belief that Lubin had suffered a failed back surgery was unfounded. The ALJ reasonably found that the documented findings do not establish a failed back surgery which leads to the conclusion that Dr. Mechling relied primarily on Lubin's unreliable subjective history in reaching her conclusions about the extent of his functional limtitations.

Dr. Mechling also provided an assessment of Lubin's mental functional capacity, indicating he had moderate to marked impairment in every category of mental function except the ability to carry out short, simple instructions. *Id.* at 286-87. Dr. Mechling concluded Lubin's depression and poor literacy skills made him unfit for work. *Id.* at 293. The ALJ gave limited weight to Dr. Mechling's assessment. *Id.* at 54.

The ALJ pointed out that Dr. Mechling's progress notes during the relevant time did not include observations of significant symptoms of mental illness. *Id.* In January 2005, Lubin complained of anxiety and depression associated with separation from his wife and problems with his teenage son. Dr. Mechling prescribed an antidepressant medication and urged Lubin to increase his physical activity and avoid substance abuse. *Id.* at 209-10. In March and April 2005, Dr. Mechling obtained normal findings on mental status examinations. *Id.* at 206, 207. In June 2005, Lubin appeared anxious, agitated, and depressed, but improved when Dr. Mechling administered an anti-anxiety agent. *Id.* at 204. In January 2006, Lubin complained of a recurrence of anxiety which had been worsening over the preceding couple of months. Dr. Mechling started a different antidepressant medication and repeated her recommendation to increase physical activity and avoid substance abuse. *Id.* at 202. Thereafter, until Lubin's insured status expired in December 2006, Dr. Mechling's notes reflected normal findings in her mental status examinations. *Id.* at 300, 304, 305,

306, 309, 310. This record reflects that Lubin's mental health symptoms appeared to be controlled for the most part during the relevant time. Impairments that can be controlled by medication are not disabling for the purposes of the Social Security Act. *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

In July 2008, Dr. Mechling treated Lubin for injuries allegedly suffered in a fight with his son several days earlier. Lubin reported his son had been drinking and one of them, it is not clear which, thought the other intended to shoot himself with a gun. Lubin suffered injuries to his ankle and nose in the struggle over the gun. *Id.* at 370. In October 2008, nearly two years after the expiration of the relevant time for Lubin's claim, Dr. Mechling wrote in support of Lubin's disability claim that she had seen him "in severe suicidal depression." *Id.* at 339. The ALJ reasonably found that Dr. Mechling's progress notes during the relevant time did not reflect severe suicidal depression, that Lubin did not require psychiatric or emergency department intervention commensurate with severe suicidal depression, that his symptoms were generally controlled by the medications Dr. Mechling prescribed, and that he had not followed recommendations to avoid substance abuse to alleviate his symptoms. *Id.* at 54.

An ALJ can properly discount a treating physician's opinion that is conclusory in form and does not offer clinical or objective findings to support its conclusions. *Batson*, 359 F.3d at 1195; *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is reasonable to conclude, in the absence of evidence supporting a physician's opinion, that the opinion is premised on the subjective history given by the claimant. An ALJ may reject a physician's opinion that is premised on the claimant's subjective statements which the ALJ finds unreliable; the physician's opinion is

no more credible than the statements upon which it is based; *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 n.8 (9th Cir. 2009); *Tonapetyan*, 242 F.3d at 1149.

Lubin argues that the ALJ improperly discounted Dr. Mechling's opinion because she is not a psychiatrist or psychologist. Lubin is correct that a treating physician's opinion as to the claimant's mental functioning may not be disregarded because the treating physician is not a mental health specialist. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). Here, the ALJ noted that Dr. Mechling is not a licensed psychologist or psychiatrist, but did not disregard her opinion on that basis. Admin. R. 54. The ALJ considered the opinion and gave it reduced weight for the reasons discussed previously. I do not read the case law to require an ALJ to ignore a physician's expertise in assessing the weight to be given the physician's opinion. Accordingly, it was not error for the ALJ to mention that Dr. Mechling is not a mental health specialist. In any event, the ALJ gave specific and legitimate reasons independent of Dr. Mechling's specialty for giving her opinion reduced weight. *Bayliss*, 427 F.3d at 1216.

Dr. Shields conducted his pyschodiagnostic evaluation in May 2006. He observed that Lubin appeared distraught and agitated and cried profusely. He found indications of mild to moderate limitations in concentration. Lubin had good immediate recall, but his recent memory was somewhat compromised. Dr. Shields believed Lubin was of low average intellect. Admin. R. 218-19. On self reported measures of depression and anxiety, Lubin's responses placed him in the severe classification for both. *Id.* at 219. Dr. Shields reached a provisional diagnosis of major depression, but could not rule out a substance induced mood disorder, cannabis dependence, methamphetamine dependence, or a personality disorder. *Id.* at 220.

15 - OPINION AND ORDER

With respect to functional limitations, Dr. Shields opined that Lubin had mild to moderate limitations in concentration, due at least in part to heavy marijuana use. Taken together with his self reported depression and anxiety, Dr. Shields doubted Lubin could "persist and maintain pace for 8 hours per day, 5 days per week." *Id.* at 220.

The ALJ gave little weight to this conclusion. *Id.* at 54. The ALJ noted that Dr. Shields relied on a single examination which was based primarily on subjective reporting from Lubin. The ALJ found the evidence of exaggeration in Lubin's reporting and presentation of symptoms to other examiners made his presentation to Dr. Shields unreliable. Dr. Shields indicated that Lubin appeared fairly credible, but he did not have the benefit of Dr. Sorweide's report documenting exaggeration and faking by Lubin. Indeed, Dr. Shields's assumption of credibility was not accurate. *Id.* at 220. For example, Lubin told Dr. Shields he could lift only 20 pounds and stand for only 10 minutes, contrary to his testimony. *Id.* at 26-28, 219. He told Dr. Shields he had been in special education classes throughout school, but reported on his application that he had not attended special education classes. *Id.* at 137, 216, 217. As a whole, the record supports the ALJ's conclusion that Lubin's lack of credibility rendered Dr. Shield's opinion unreliable. *Tonapetyan*, 242 F.3d at 1149.

In summary, the ALJ articulated an adequate explanation for discounting the opinions of Drs. Mechling and Shields. Lubin urges the court to substitute his interpretation of the evidence for that of the Commissioner. Because the ALJ's findings are based on inferences reasonably drawn from the record, the court may not substitute a different view of the evidence even if it is susceptible to more than one rational interpretation. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

### D.    Consistency of Findings

Lubin contends the ALJ's RFC assessment is flawed because it is not consistent with her findings at step three that he has moderate difficulties maintaining concentration, persistence, or pace. Admin. R. 51. In fact, the RFC assessment restricted Lubin to work requiring no more than simple tasks of no more than three steps. *Id.* This limitation is consistent with Lubin's testimony. *Id.* at 22. I find no inconsistency in the ALJ's findings.

### E.    Development of the Record

Lubin contends the ALJ was required to develop the record more fully before assessing his RFC. Lubin contends the ALJ should have investigated his allegation that he cannot work due to diplopia and functional illiteracy and Dr. Shields's statement that a cognitive disorder "should probably be ruled out." *Id.* at 220. The ALJ found these alleged impairments inconsistent with Lubin's work history. *Id.* at 55.

Lubin's alleged diplopia, dyslexia, and cognitive disorder are lifelong impairments that have persisted since he suffered head trauma at the age of 7 or 8. *Id.* at 138, 212, 216, 300. Lubin's work history demonstrates that these conditions did not preclude him from performing basic work activities. *Id.* at 55. Despite these conditions, Lubin performed skilled work as a cement mason, owned and operated his own small business, and designed construction projects. *Id.* at 12, 39 193. None of Lubin's former jobs or activities ended because of these conditions.

A claimant must bring to the attention of the Commissioner everything that shows he is disabled, including evidence of his medical impairments. 20 C.F.R. § 404.1512(a). This requirement recognizes that the claimant is in a better position to provide information about his medical condition and identify sources of such information. *Yuckert*, 482 U.S. 137, 140 n.5 (1987).

17 - OPINION AND ORDER

The Commissioner shares the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Once a claimant has identified sources of information and the Commissioner has considered the information, a duty to develop the record further is triggered only if there is ambiguous evidence or the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F3d 453, 459-60 (9th Cir 2001).

Here, Lubin has identified his own subjective reports, the identical reports of his wife, and the report of Dr. Shields to support his argument that further development is necessary. The ALJ found each of these sources unreliable for reasons explained previously. Accordingly, Lubin has provided no reliable evidence that his ability to perform basic work activities is diminished by these conditions. Accordingly, Lubin has not identified ambiguous evidence or shown that the record is inadequate to properly evaluate the evidence. Further development is not necessary under these circumstances.

### III.  Vocational Evidence

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the vocational factors and functional limitations of the claimant can perform. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(e), (f). The ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F.3d at 1043.

Lubin contends the VE's testimony has no evidentiary value because the ALJ used hypothetical assumptions that did not reflect limitations established by the opinions of Drs. Mechling and Shields, Lubin's subjective statements, and the lay statements of Lubin's wife. The ALJ properly discounted that evidence for reasons described previously, however, and she was not

18 - OPINION AND ORDER

required to incorporate limitations based on properly discounted evidence. *Batson*, 359 F3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1164-65 (9th Cir 2001).

## CONCLUSION

The Commissioner's decision is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. Under these circumstances, the court must affirm the Commissioner. 42 U.S.C. § 405(g); *Batson,* 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

## ORDER

For the foregoing reasons, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

DATED this 31 day of March 2011.

                                                                                            /s/ Ann Aiken
                                                                                            Ann Aiken
                                                                                            United States District Court Judge

19 - OPINION AND ORDER